```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------X
JUAN RODRIGUEZ,

                        Plaintiff,            MEMORANDUM AND ORDER
                                              11 CV 6322 (LB)
        -against-

HOME DEPOT U.S.A., INC.,

                        Defendant.
-------------------------------------------------------X
```
**BLOOM, United States Magistrate Judge:**

In this personal injury action, plaintiff Juan Rodriguez seeks damages for injuries he suffered at a Home Depot store in Flushing, New York on the morning of May 2, 2011.[1] Plaintiff alleges that, as he was waiting in line to purchase sheets of plywood, the cart holding the lumber collapsed, causing the wood to fall on top of him and breaking his leg, resulting in permanent injuries. Plaintiff further alleges that defendant negligently caused the accident by providing a defective cart, and that defendant had actual or constructive notice of the cart's defect.

This case was reassigned to me upon the filing of the parties' consent under 28 U.S.C. § 636(c). (ECF No. 19.) Defendant moves for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure, asserting that there is no genuine dispute as to any material fact to refute its defense that it was not the proximate cause of plaintiff's injury.[2] Specifically, defendant argues that plaintiff fails to show that the cart he was using at the time of the accident

---
[1] Plaintiff commenced this action in New York Supreme Court, Queens County, on May 12, 2011. (ECF No. 1.) Defendant removed the action based on diversity jurisdiction on December 28, 2011. Id.
[2] Defendant submitted a statement of undisputed material facts pursuant to Local Civ. R. 56.1(a). Plaintiff did not file a proper counter-statement pursuant to Local Civ. R. 56.1(b), which requires the non-moving party to "include a correspondingly numbered paragraph responding to each numbered paragraph in the statement of the moving party." Local Civ. R. 56.1(b). Nevertheless, the Court may not rely solely on defendant's statement of facts; it "must be satisfied that the citation to evidence in the record supports the assertion." Vt. Teddy Bear Co. v. 1-800 Beargram Co., 373 F.3d 241, 244 (2d Cir. 2004); see also Giannullo v. City of N.Y., 322 F.3d 139, 140 (2d Cir. 2003) (the Court must review the record to ensure it supports defendant's Rule 56.1 statement of facts). Therefore, the Court deems admitted only those facts in defendant's Rule 56.1 statement that are supported by admissible evidence and not controverted by the record.

was defective, and that the evidence adduced during discovery conclusively demonstrates that defendant did not create, or have notice of, a hazardous condition subjecting it to liability for plaintiff's injuries. The Court finds material issues of fact are in dispute and therefore denies defendant's motion for summary judgment.

## **BACKGROUND**

On the morning of May 2, 2011,[3] plaintiff went to the Home Depot store located at 131-35 Avery Avenue in Flushing, New York with a contractor who had hired him to help build a fence for a residential construction project. See Dep. Tr. of Juan Rodriguez, Ex. E. to Le Aff. ("Rodriguez Tr.") at 11-12, 29-31. When they arrived at the store, the contractor instructed plaintiff to wait in line with a cart that had been loaded with approximately sixteen sheets of plywood, each measuring approximately six feet by three feet. See id. at 36, 46. The contractor continued into the store to pick up additional supplies. Id. at 37.

As described by witnesses to the accident, plaintiff's cart featured a "tabletop" design allowing users to stack supplies on an elevated platform approximately four feet high. Id. at 43-45; see also Dep. Tr. of Philip Hartman, Ex. F. to Le Aff. ("Hartman Tr.") at 10. Philip Hartman, an assistant store manager of the Home Depot where plaintiff's accident occurred, testified that the cart, one of approximately fifty lumber carts available at the store, "looks like a table on [six] wheels." Hartman Tr. at 5-6, 9-11; id. at 16 ("They have two bigger [wheels] in the middle and then each corner has four, you know, smaller ones."). Although the cart also had a lower shelf where items could be loaded, all of the plywood on plaintiff's cart was stacked on the upper

---

[3] Plaintiff testified at his deposition, which was conducted through a Spanish interpreter, that the date of his accident was April 4, 2011. Rodriguez Tr. at 28. As the closed circuit television ("CCTV") recording submitted with defendant's motion for summary judgment shows, and as eyewitnesses to the accident testified, the accident occurred on May 2, 2011. See, e.g., Le Aff. Ex. 1. Plaintiff submitted an affidavit in support of his opposition to defendant's summary judgment motion, which confirms May 2, 2011 as the date of the accident. See Aff. of J. Rodriguez, Ex. C to Kronrad Aff., ¶ 2 ("Rodriguez Aff.").

2

platform because the sheets of wood were too wide to fit on the lower level.  See Rodriguez Tr. at 74.

Because the cart had already been loaded when plaintiff arrived at the Home Depot store, plaintiff did not see who stacked the lumber on the cart, and did not know how the cart got to where he found it.  Plaintiff testified, however, that he believed defendant's employees may have loaded the cart.  Id. ("[The contractor] went in and left me waiting by the cart and the boards. The workers had already placed them on the cart.").  During his deposition, plaintiff testified as follows:

> Q: And do you know if the contractor had been to the store before that day, earlier in that day?
> A: No.
> Q: No, you don't know or no, he wasn't at the store earlier in the day?
> A: No.  He was coming from his home.  He called me, because he called me from his phone.
> Q: Mr. Rodriguez, when he called you, did he tell you he was calling from home?
> A: The contractor?  Yes.
> Q: Did the contractor indicate to you if he had placed an order at the Home Depot for wood before walking into the store that day?
> A: No.
> Q: Do you know how the cart with the wood got to where it was when you walked into the store?
> A: No.
> Q: Did you see anyone load the pieces of wood onto that cart?
> A: No.
> Q: Did the contractor ever indicate to you that he had placed an order with the Home Depot for the pieces of wood?
> A: No.
> Q: Did the contractor indicate[] to you that he had somebody else go to the Home Depot that day and pick up pieces of wood before you and him walked into the store?
> A: No.
> Q: And earlier when you said that the cart was already about five meters from where your accident occurred loaded with wood, you indicated that it was loaded by workers; what did you mean by that?
> A: I'm saying it's the same ones that work – that loaded it, because I imagine the customer is not going to load it.  It must be the workers.  It must be.
> Q: Mr. Rodriguez, did you see that cart get loaded?
> A: No.
> Q: And did you load that cart?

3

      A:      No.
      Q:      So you're guessing that it would have been an employee of Home Depot that loaded that cart as opposed to a customer?
      A:      It might be. It might be. I don't know who loaded it. I'm saying maybe a worker.

Id. at 39-42. Because plaintiff could not recall the name of the contractor who accompanied him to the Home Depot store, and because the CCTV recording submitted by defendant in support of its motion begins after the cart is positioned in the checkout line, plaintiff's testimony is the only evidence in the record regarding who loaded the lumber onto the cart. See id. at 11; Le Aff. Ex. I.

After the contractor left him to pick up other supplies, plaintiff moved the cart approximately six to ten feet from where he found it to get into the checkout line. Id. at 43. Plaintiff did not notice anything wrong with the cart or with the way it was loaded at that time; he testified that, although the cart was heavy, he did not have difficulty moving the cart. Id. at 50, 56-57. Plaintiff explained that the cart was in front of him as he was waiting in line, and that he had his back to the cart, watching for the contractor to return with the rest of the supplies. Id. at 54. He also testified that the cart did not move from the time he wheeled it into the checkout line and when the accident occurred. Id. at 56 ("Q: When you were on line, was there anybody that moved the cart before your accident so that they can move past your cart in order to get it further in the store? A: No.").[4] Plaintiff had been waiting in line for two to three minutes when the sheets of plywood fell from the cart, striking plaintiff in the lower back and knocking him to the ground. Id. at 58-61.

---

[4] Plaintiff also gave a written statement to defendant at the store on the day of the accident before being taken to the hospital. This statement, which was written in Spanish, was translated at plaintiff's deposition as, "I went to move the cart and the cart tipped over and all of the wood came on top of me and I fell. All the wood fell on the top of my left leg." Rodriguez Tr. at 78. At his deposition, plaintiff clarified that he moved the cart only into the checkout line; he testified that he did not touch the cart immediately before the accident. Id. at 79. Plaintiff also reiterated this clarification in his affidavit. See Rodriguez Aff. ¶ 16 ("Prior to my accident, I did not see anyone walk by me or the cart. I also did not see anyone bump into or hit the cart or the plywood that was on top of it. I did not touch the cart or the plywood on it just prior to the accident.").

Although defendant's employees moved the cart away from plaintiff after the accident, plaintiff testified that he saw the cart before he was taken to the hospital by paramedics. Id. at 62. He explained that two of the cart's wheels were "turned" abnormally. Id. at 62-65 (Q: When you say two tires were turned up, what do you mean?  A:  I'm saying that the cart was not in good condition . . . I'm saying bad maintenance of the cart. . . . I saw the cart.  It wasn't like the other ones, normal."). In addition, plaintiff testified that he tried to take pictures of the cart after the accident, but that a security guard prevented him from doing so. Id. at 84; see also Rodriguez Aff. ¶ 19 ("I tried to take photographs of the cart with my cell phone while I was on the ground, however, the security guard told me that I was not allowed to take any photographs. It was at that time that the cart was picked up and taken away.").

Two other witnesses who observed the cart after plaintiff's accident testified that "the wheels were bent" and "weren't aligned." See Dep. Tr. of Freddy Cedeno, Ex. G. to Le Aff. ("F. Cedeno Tr.") at 19-21 ("Q: What observations did you make about the wheels on the cart? A: They weren't aligned, they were bent. Q: How were they bent? A: What hold[s] up the cart is four wheels and they were like bent. . . . The wheels have a base and that base was bent. . . . What holds up the wheel was not in its normal position in order for the cart to roll."); see also Dep. Tr. of Luis Cedeno, Ex. H. to Le Aff. ("L. Cedeno Tr.") at 10 ("Q: Did you notice if there was anything wrong with the cart after the accident? A: When it was upside down, the two tires or wheels on the right side … they were turned or bent with the base and everything."); id. at 13 ("Q: Were they angled, in any way, the wheels on the cart that was involved in Mr. Rodriguez's accident? A: They were twisted, they were twisted to the side where the things had fallen. . . . They were broken, turned."); id. at 21 ("[T]hey were bent because of the weight [of the lumber loaded on the cart].").

5

Philip Hartman, the assistant manager of defendant's store, testified that he arrived at the scene of the accident shortly after it occurred and observed the cart on its side. Hartman Tr. at 27. He testified that, because he was primarily concerned with plaintiff's safety, he did not inspect the cart at that time. Id. Although another manager on duty was responsible for evaluating whether the cart should be put back into service, Hartman did not know whether anyone did so, and his testimony was equivocal on whether the cart was returned to service. Compare id. at 29 (stating that the cart was "put back in service right out in the parking lot" on the day of the accident) with id. at 34-36 (agreeing that he is "not really sure if it was put back into service that day"). Although defendant attached photographs of "an exemplar table top cart," (see Aff. of Tommy Yee Yam ¶ 6; Ex. J to Le Aff.), defendant submitted no photographs or other evidence regarding the condition of plaintiff's cart either before or after the accident.[5]

Defendant did, however, submit twenty minutes of video from its CCTV surveillance system. See Ex. I to Le Aff. Shortly after the recording begins, the video appears to show a cart loaded with lumber topple, knocking a man to the floor. Crucially, the line of sight between the camera and the cart is partially obstructed by another cart loaded with materials, and it is impossible to make out details such as the cart's wheels from the video. In addition, because of the low-quality picture and the camera angle, the video does not show what prompted the cart to collapse.

Although defendant's counsel showed the CCTV recording from the store's security tapes to plaintiff during his deposition and repeatedly insisted that plaintiff identify himself and

---

[5] In response to the accident, Mr. Hartman prepared an internal form known as a General Liability Claim Worksheet. Hartman Tr. at 30. In response to a question on that form, Mr. Hartman indicated that the manager on duty took photographs of the accident; at his deposition, however, Mr. Hartman stated that he merely meant to report that the CCTV captured the incident, despite the fact that he also answered "yes" to the form question "was the incident captured on CCTV." Id. at 38.

the cart he was using, plaintiff made clear that he could not see the cart in the video recording.[6] Rodriguez Tr. at 147-48 ("Q: Can you tell looking at this video how many carts of wood are behind the gentleman with the cart . . . ? A: I don't see it. Not even the cart where I'm at. What else can I tell you[?] I don't see it. . . . What can I tell you if I don't see anything?"). Plaintiff expressed doubts that the video he was shown during his deposition was, in fact, a recording of the accident, and he made clear that he could not confirm details regarding the accident based on viewing the video. Id. at 156-58; 184-86 ("Q: And those sheets of wood were the same types of wood that were on your cart at the time of your accident? A: I can't confirm. I don't know if they were . . . . You can't see clearly on the video.") Significantly, defendant's own employee was also unable to make out details of the accident from the video, stating that "some of the view was obstructed" and "on the video the scene is obstructed by a cart in front of it." Hartman Tr. at 40, 42. Both of the other deponents who were shown the video recording noted their difficulty in seeing the accident. See F. Cedeno Dep. at 55 ("It's that you can't see it clearly."); id. at 59 ("Q: [T]he pieces of wood that were on the cart that just fell over in the video, were those plywood or were those something else? A: You can't distinguish that in the video."); id. at 62 ("You can't see the video, you can't see that good."); see also L. Cedeno Tr. at 39 ("Q: Looking at the video today, were you able to see how Mr. Rodriguez's accident occurred? A: I couldn't distinguish it well.").

Although the video recording submitted by defendants does not show the condition of the cart involved in plaintiff's accident, defendant's employee testified at length during his

---

[6] In opposing defendant's summary judgment motion, plaintiff's counsel argues that "the video should certainly not be considered by this Court in deciding the instant motion, as each witness shown that video stated that they could not identify anyone or anything in it." Kronrad Aff. ¶ 57. Having determined from the deposition testimony of witnesses to the accident and from repeated viewing of the video itself that the recording sheds little to no light on what precipitated plaintiff's accident, the Court finds that the video has no probative value in resolving the parties' dispute regarding any material issue of fact. Cf. Scott v. Harris, 550 U.S. 372, 380 (2007) ("When opposing parties tell two different stories, one of which is blatantly contradicted by the [video] record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment.").

7

deposition regarding how the carts at the store were maintained. According to Hartman's testimony, defendant's employees did not conduct regular inspections of the carts. Hartman Tr. at 14-15. Instead, when the associates responsible for collecting carts used by shoppers noticed a cart that was "broken or unsafe," they would notify a supervisor and bring the cart to the store's "designated area for broken carts." Id. at 12-13; id. at 14-15 ("Q: [W]hat I'm asking is was there any sort of procedure in place by Home Depot where an employee of Home Depot, regardless of who that employee was, would inspect the carts on any sort of regular basis? A: Just as you are touching them, if they're unsafe you bring them back, but no official inspection as far as a date or time."). Although Hartman testified that a third party company checked the carts every month to repair any damaged carts, he could not identify the company by name and could not speak to how thoroughly the carts were inspected. Id. at 14-15 ("There's a company that repairs them and they walk the parking lot and check all carts to see if there's anything that needs to be repaired, missing wheels, stuff like that. How detailed their inspection is, I'm not sure."). Hartman estimated that he witnessed these third party company inspections three times during his eighteen month tenure at the store, and stated that the company repaired an average of two carts at each of those visits. Id. at 22. Because no records were kept regarding any repairs to a shopping cart, Hartman did not testify regarding how recently the carts had been inspected, prior to plaintiff's accident. Similarly, defendant did not maintain any records of customer complaints regarding a particular cart.[7] See id. at 14, 17 ("Q: Is there any sort of procedure if a customer was to complain about a cart that any paperwork with respect to the complaint would be filled out? A: No such paperwork, no.").

---

[7] One witness testified during his deposition that he had personally complained to a manager at the Home Depot store where plaintiff's accident occurred about the difficulty of using the table top carts. See L. Cedeno Tr. at 25 ("Q: What specifically did you complain to Home Depot about with respect to the table top cart – A: That when you pick up the materials, that it's very difficult[] to move straight, that those carts are always like twisted.").

Shortly after his accident, plaintiff filed this personal injury action in New York State Supreme Court, Queens County, alleging negligence as the sole cause of action. See Verified Complaint, Le Aff. Ex. A.[8] After filing an answer on September 8, 2011 denying all substantive allegations, defendant removed the action to this Court on December 28, 2011 alleging diversity of citizenship and more than $75,000 in controversy. (ECF No. 1.) The parties conducted discovery. Defendant now moves for summary judgment; plaintiff opposes the motion and defendant has replied.

## DISCUSSION

### I. Standard of Review

"Summary judgment is proper only when, construing the evidence in the light most favorable to the non-movant, 'there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" Doninger v. Niehoff, 642 F.3d 334, 344 (2d Cir. 2011) (quoting Fed. R. Civ. P. 56(a)). A fact is material if it is one that "might affect the outcome of the suit under the governing law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). Similarly, "an issue of fact is 'genuine' if 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" McCarthy v. Dun & Bradstreet Corp., 482 F.3d 184, 202 (2d Cir. 2007) (quoting Anderson, 477 U.S. at 248). "The trial court's function in deciding such a motion is not to weigh the evidence or resolve issues of fact, but to decide instead whether, after resolving all ambiguities and drawing all inferences in favor of the non-moving party, a rational juror could find in favor of that party." Pinto v. Allstate Ins. Co., 221 F.3d 394, 398 (2d Cir. 2000); see also O'Hara v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA, 642 F.3d 110, 116 (2d Cir. 2011) ("[T]he district court's task on a summary judgment motion – even

---

[8] Although plaintiff's Verified Complaint is dated May 4, 2011, two days after the accident, defendant's Notice of Removal states that the state court action was filed "on or about May 12, 2011." (ECF No. 1.)

9

in a nonjury case – is to determine whether genuine issues of material fact exist for trial, not to make findings of fact.").

The moving party bears the initial burden of establishing that there are no material facts in dispute. Anderson, 477 U.S. at 256. Where the movant shows a prima facie entitlement to summary judgment, "the burden shifts to the non-movant to point to record evidence creating a genuine issue of material fact." Salahuddin v. Goord, 467 F.3d 263, 273 (2d Cir. 2006). "Conclusory allegations, conjecture, and speculation . . . are insufficient to create a genuine issue of fact." Niagara Mohawk Power Corp. v. Jones Chem., Inc., 315 F.3d 171, 175 (2d Cir. 2003) (quoting Kerzer v. Kingly Mfg., 156 F.3d 396, 400 (2d Cir. 1998)). Moreover, "[e]ven where facts are disputed, in order to defeat summary judgment, the non-moving party must offer enough evidence to enable a reasonable jury to return a verdict in its favor." Byrnie v. Town of Cromwell, Bd. of Educ., 243 F.3d 93, 101 (2d Cir. 2001).

## II.  Negligence

In order to establish negligence under New York law, a plaintiff must prove: (1) the existence of a duty owed to the plaintiff; (2) a breach of that duty; and (3) the breach was the proximate cause of plaintiff's injury. DiBenedetto v. PanAm World Servs., Inc., 359 F.3d 627, 630 (2d Cir. 2004); Irizarry v. Heller, 95 A.D.3d 951, 952-53, 943 N.Y.S.2d 606 (2d Dep't 2012). It is well-settled that a storekeeper owes a duty to its customers to keep the condition of the store safe. Accordingly, defendant had a "non-delegable duty to maintain the equipment on its premises in a reasonably safe condition." Albergo v. Deer Park Meat Farms, 138 A.D.2d 656, 656, 526 N.Y.S.2d 580 (2d Dep't 1988).

Under New York law,[9] a plaintiff seeking to establish the negligence of a store owner "must be able to demonstrate that the defendant had created the condition which caused the accident or that it had actual or constructive notice of the condition." See Kane v. Human Servs. Ctr., Inc., 588 N.Y.S.2d 361, 362 (2d Dep't 1992). Defendant contends that plaintiff fails to raise a genuine issue of material fact as to whether defendant either created or had notice of the defective condition that caused plaintiff's injuries. The Court disagrees.

### A. Whether Home Depot Created the Defective Condition is an Issue of Fact

In light of plaintiff's testimony that the cart was already loaded with wood when he arrived at the store, as well as a witness's testimony that the wheels of the cart "were bent from the weight [of the lumber loaded on the cart]," a reasonable jury could conclude that defendant's employees loaded the cart in a manner that caused or contributed to plaintiff's accident.[10] "A plaintiff may establish that the defendant created a condition which caused his injuries either by direct or circumstantial evidence." Harris v. Home Depot, Inc., No. 96-CV-5583, 1999 WL 1129617 (E.D.N.Y. Oct. 29, 1999). Where a plaintiff relies on circumstantial evidence, "the trier of fact must reach its conclusions based on logical inferences drawn from the evidence, not upon speculation." Dumont v. P.S. Griswold Co., 667 N.Y.S.2d 801, 803 (3d Dep't 1998).

In Harris, the court concluded that a plaintiff who had been injured by a piece of aluminum sheet metal protruding into the aisle from a display had raised an issue of fact as to whether defendant Home Depot had created the condition. Harris, 1999 WL 1129617, at *2-3. Specifically, the court noted that, "[f]rom [a contractor's] testimony that he could not 'budge' the stack of sheet metal, a reasonable jury could conclude that it was more likely than not that an

---

[9] New York law applies to this personal injury action. See Velez v. Sebco Laundry Sys., Inc., 178 F.Supp.2d 336, 339 (S.D.N.Y. 2001) ("New York state law applies to this tort action because a federal court sitting in diversity applies the law of the forum state and because New York is the state where the tort occurred.").
[10] The parties' briefing makes only passing reference to who loaded the cart, focusing instead on the alleged defect in the cart itself. See, e.g., Def.'s Memo of Law in Support of Motion for Summary Judgment at 11 ("[T]he carts contain [a] warning in English and Spanish not to overload a cart."). The Court cannot resolve the parties' dispute regarding what caused plaintiff's cart to collapse on a motion for summary judgment.

11

employee of Home Depot – not a customer – carelessly stacked the display of sheet metal when it was restocked by hand." Id. at *3. Accordingly, the court denied defendant's motion for summary judgment.

Here, plaintiff testified unequivocally that neither he nor the contractor he accompanied to the store that day loaded the cart involved in his accident, and that the cart had already been loaded by the time they arrived at Home Depot. See Rodriguez Tr. at 39-42. In light of that testimony, a reasonable jury could infer that Home Depot employees were responsible for choosing the cart, loading the cart, and placing the cart where it would be picked up.[11] Defendant's statement that it is entitled to summary judgment because "plaintiff cannot establish who loaded the cart and when" misapprehends plaintiff's burden at the summary judgment stage. Plaintiff need not conclusively establish whether defendant created the condition for defendant's motion to be denied; plaintiff need only cite to evidence creating a genuine issue of a material fact. See, e.g., Janetos v. Home Depot U.S.A., Inc., 09-CV-1025, 2012 WL 4049839 (E.D.N.Y. Sept. 13, 2012) (denying summary judgment to plaintiff who "did not herself observe how the doors were stacked immediately prior to the accident," but whose testimony raised "the equally speculative prospect that a contractor or some other customer . . . re-stacked the doors improperly," concluding "there is an issue of fact whether a customer improperly stacked the doors that hit [plaintiff] or whether a Home Depot employee created the hazardous condition."); see also Lohle v. Stop & Shop Supermarket Co., LLC, 36 Misc.3d 1235(A), 2012 WL 3663461, at *5 (NY Sup. Aug. 20, 2012) (holding that "defendant failed to submit sufficient evidence to … show[] that its employees did not create the allegedly dangerous condition that caused the plaintiff to slip," where "there was no affidavit from [an] employee" to that effect).

---

[11] Defendant's attorney suggested this possibility when she asked plaintiff the following question at his deposition: "Q: Did the contractor indicate to you if he had placed an order at the Home Depot for wood before walking into the store that day?" See Rodriguez Tr. at 40.

### B. Whether Defendant Had Notice of the Cart's Alleged Defects

Even if plaintiff's testimony did not raise an issue of fact regarding whether Home Depot employees created the condition causing plaintiff's injuries by improperly loading the cart, the parties' factual dispute regarding whether defendant had actual or constructive notice of the allegedly defective cart would preclude summary judgment here.

As a threshold matter, defendant's motion repeatedly asserts that "plaintiff has not even established that there was a defect on this table top cart," and that "[t]here were no problems with the wheels of the cart." See Def.'s Memo of Law in Support of Mot. for Summary Judgment at 4, 8. Notwithstanding defendant's assertions, on the instant motion for summary judgment, the Court views the evidence that the cart's wheels "weren't aligned, they were bent" (F. Cedeno Tr. at 19), that "the wheels have a base and that base was bent" (id. at 20), and that the wheels on the cart were "twisted . . . broken, [and] turned" (L. Cedeno Tr. at 13), in the light most favorable to plaintiff.

To establish that a defendant had actual or constructive notice of a defective condition, there must be evidence that a defendant "knew or should have known about the defect." Velez v. Sebco Laundry Sys., Inc., 178 F.Supp.2d 336, 341 (S.D.N.Y. 2001) (citing Rogers v. Dorchester Assoc., 347 N.Y.S.2d 22 (1973)). "An owner can be deemed to have constructive notice of a dangerous condition if it is visible and apparent, and if the condition existed for enough time before the accident to permit the owner's employees to discover and remedy the problem." Pintor v. 122 Water Realty, LLC, 90 A.D.3d 449, 451, 933 N.Y.S.2d 679 (1st Dep't 2011) accord Greco v. Starbucks Coffee Co., No. 05 Civ 7639, 2006 WL 1982761, at *3 (S.D.N.Y. July 14, 2006). Plaintiff alleges that defendant had constructive knowledge of the cart's defects.[12] "An

---

[12] Plaintiff does not argue that defendant had actual notice of the cart's defects. "A defendant has actual notice if it either created the condition or received reports of it such that it is actually aware of the existence of the particular condition" causing a plaintiff's injuries. Cousin v. White Castle Sys., Inc., No. 06-CV-6335, 2009 WL 1955555, at

13

owner can be deemed to have constructive notice of a dangerous condition if it is visible and apparent, and if the condition existed for enough time before the accident to permit the owner's employees to discover and remedy the problem." Janetos, 2012 WL 4049839, at *12 (quoting Pintor, 90 A.D.3d at 451; see id. (denying summary judgment to plaintiff, noting, "In the absence of direct or circumstantial evidence, the Court cannot and will not speculate as to how long the dangerous condition existed.").

Constructive notice can be established by circumstantial evidence from which a factfinder could infer that the dangerous condition existed for some time prior to the accident. See, e.g., Velez, 178 F.Supp.2d at 341. Significantly, if a plaintiff presents evidence that proper testing would have uncovered a defect, summary judgment is inappropriate. See Albergo, 138 A.D.2d at 657 (where plaintiff presented testimony suggesting "that a reasonable inspection of the shopping cart would have given defendant notice of the wheel's defective condition," holding that "the jury could properly conclude that the defendant was negligent and that its negligence was a proximate cause of the accident").

"To meet its initial burden on the issue of lack of constructive notice, the defendant must offer some evidence as to when the area in question was last cleaned or inspected relative to the time when the plaintiff fell." Birnbaum v. New York Racing Ass'n, Inc., 57 A.D.3d 598, 599-600, 869 N.Y.S.2d 222 (2d Dep't 2008). New York courts consistently hold that summary judgment is inappropriate where a defendant fails to offer such evidence. See, e.g., Musachio v. Smithtown Cent. Sch. Dist., 68 A.D.3d 949, 949, 892 N.Y.S.2d 123 (2d Dep't 2009) (affirming

---

*7 (E.D.N.Y. July 6, 2009). Although Luis Cedeno testified that he had complained in the past to a Home Depot employee about difficulties using the lumber carts, and Freddy Cedeno testified that he had a previous accident with a tabletop cart, this testimony does not establish that Home Depot knew of a defect with the particular cart plaintiff used on the day of the accident. See, e.g., Piacquadio v. Recine Realty Corp., 84 N.Y.2d 967, 969 (1994) ("[A] general awareness that a dangerous condition may be present is legally insufficient to constitute notice of the particular condition that caused plaintiff's fall."); cf. Velez, 178 F.Supp.2d at 341 ("Velez does not contend, nor can she, that Sebco had actual notice of the defect. There is no evidence of any report to Sebco that the glass on the dryer door was defective. Nor is there any evidence of a similar problem occurring in any other machine in the apartment building.").

denial of defendant's summary judgment motion where "[t]he deposition testimony of the defendant's custodian failed to establish when the area where the accident occurred was last cleaned or inspected prior to the occurrence of the accident."); Birnbaum, 57 A.D.3d at 599-600 (reversing grant of summary judgment in a slip-and-fall action to defendant whose manager "merely referred to the subject of the racetrack's general daily cleaning practices" and "tendered no evidence regarding any particularized or specific inspection or stair-cleaning procedure in the area of the plaintiff's fall on the date of the accident"); Lohle v. Stop & Shop Supermarket Co., LLC, 36 Misc.3d 1235(A), 2012 WL 3663461, at *5 (NY Sup. Aug. 20, 2012) (denying summary judgment where "defendant failed to make a prima facie showing that it did not have constructive notice of the alleged dangerous condition . . . which caused the plaintiff's fall" where "the deposition testimony of the defendant's manager, which merely referred to the general inspection practices of the supermarket . . . provided no evidence as to when the entryway was actually last inspected before the plaintiff's fall").

Drawing all inferences and resolving all ambiguities in favor of plaintiff, the Court finds that a factfinder could conclude that plaintiff's cart was defective, and that a reasonable inspection of the cart would have disclosed the defect. The only record evidence regarding the condition of the cart involved in plaintiff's accident comes from the eyewitnesses to the accident, all of whom testified that the wheels of the cart, or the base of those wheels, were "turned," "broken," "[not] aligned," and "bent." See, e.g., F. Cedeno Tr. at 19; L. Cedeno Tr. at 13; Rodriguez Tr. at 62-65.[13] Moreover, significant factual questions remain regarding defendant's inspection and maintenance of its carts: Hartman testified that defendant's employees did not regularly inspect the carts for damage, and he could not identify the company responsible for

---

[13] Contrary to defendant's suggestion, plaintiff's testimony that the cart seemed to be working when he moved it into the checkout line is not dispositive of the question whether the cart was defective. In light of the evidence suggesting that plaintiff moved the cart approximately six feet, and had been standing next to the cart for a matter of minutes when it collapsed, the question of whether the cart was defective is still in dispute.

15

doing so. Hartman Tr. 14-17. In addition, the evidence suggests that, although the unidentified company that inspected the carts repaired an average of two carts every month, defendant maintains no records of what repairs are made to what carts, or of any customer complaints relating to a particular cart. Id. at 17. In light of this record evidence, or lack thereof, there is a triable issue of fact as to whether defendant's carts were properly maintained such that defendant had constructive notice of the alleged defect in plaintiff's cart. See Torres v. U.S., No. 09-CV-5092, 2010 WL 5422547, at *3 (S.D.N.Y. Dec. 23, 2010) (denying motion for summary judgment, noting that "[t]he adequacy and frequency of the [property] owner's inspection is not for the Court to decide on summary judgment but is an inquiry reserved for after all the evidence has been presented").

## **CONCLUSION**

For the foregoing reasons, defendant's motion for summary judgment is denied. The Court shall hold a pre-trial conference on September 20, 2013 at 2:00 p.m. in Courtroom 11A. The parties are urged to discuss settlement.

                                                                                                                               _____

                                                                                                                               LOIS BLOOM

Dated: August 28, 2013                                    United States Magistrate Judge
       Brooklyn, New York