UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------X
JUAN RODRIGUEZ,

                  Plaintiff,                **MEMORANDUM AND ORDER**
                                                  **11 CV 6322 (LB)**

        -against-

HOME DEPOT U.S.A., INC.,

                  Defendant.
-------------------------------------------------------X
**BLOOM, United States Magistrate Judge:**

       Plaintiff Juan Rodriguez brought this personal injury action seeking damages for injuries he sustained in a Home Depot store in Flushing, New York on May 2, 2011. According to plaintiff, he was waiting in line to purchase sheets of plywood for a residential construction project when the shopping cart holding the lumber collapsed, toppling the wood onto him and breaking his leg. Plaintiff alleges that defendant negligently caused the accident by providing a defective cart, and that defendant had actual or constructive notice of the cart's defect.

       The Court held a bench trial on November 13, 2013.[1] On the consent of the parties, the bench trial was limited solely to the issue of liability. After considering the evidence at trial, and having reviewed the parties' post-trial briefing on this issue, the Court makes the following findings of fact and conclusions of law pursuant to Rule 52(a) of the Federal Rules of Civil Procedure. For the reasons set forth below, plaintiff failed to carry his burden of proving, by a preponderance of the evidence, that defendant had actual or constructive notice of any defect in the cart plaintiff used on the day of the accident. Accordingly, judgment shall enter for defendant.

---

[1] This case was reassigned to me upon the parties' consent under 28 U.S.C. § 636(c). ECF No. 19.

## FINDINGS OF FACT

On the morning of May 2, 2011, plaintiff received a phone call from a contractor who had hired him to work on a construction project. See Tr. of November 13, 2011 Trial ("Tr."), ECF No. 46, at 13. The contractor, whose name plaintiff could not recall, instructed plaintiff to meet him at the Home Depot in Flushing, New York to pick up building materials. Id. Plaintiff walked to the store. Id. at 15, 50. When he arrived at the store around 9:30 a.m., plaintiff found the contractor standing by the cash registers next to a shopping cart, which had six to eight pieces of plywood stacked on an elevated platform approximately four feet high. Id.; id. at 24. The contractor asked plaintiff to stand in line with the cart while he went to get additional supplies. Id. at 15.

Plaintiff testified regarding the condition of the cart both before and after the accident occurred, using an exemplar cart supplied by defendant as a demonstrative exhibit.[2] He stated that, after the contractor left him with the cart, he pushed the cart approximately five feet closer to the cash registers. Id. at 24. Plaintiff observed that the wood was "properly placed" on the cart, but he also noticed that the cart was difficult to push. Id. He testified on direct examination that the weight of the wood may have made the cart cumbersome. Id. at 24-25 ("When I was pushing it, it was not doing well. It was moving but – with difficulty I was pushing it. . . . I don't know whether it was because of the weight or whether there was something with the cart because it was hard to push it."). On cross examination, however, plaintiff stated that he had trouble moving the cart because "[s]omething was wrong with the cart." Id. at 50.

Plaintiff was standing with his back to the cart for approximately two to three minutes when he felt the lumber and cart topple into him, knocking him to the floor. Id. at 25-26.

---

[2]  Defendant did not preserve the cart involved in plaintiff's accident. Plaintiff testified that, although the exemplar cart had six wheels and the cart he used had four, the exemplar cart was otherwise the same as the cart involved in his accident. Id. at 18, 48.

Defendant's employees who responded to the accident moved the cart a short distance away from where plaintiff was lying on the floor. Id. at 27. When plaintiff saw the cart on its side after the accident, he observed that two of the wheel platforms on one side of the cart were bent at an outward angle. Id. at 20-21. Plaintiff had an unobstructed view of the cart's wheels from a distance of approximately five feet away. Id. at 22. Plaintiff was in significant pain at the time, and he acknowledged at trial that he was "groggy" immediately after the accident occurred. Id. at 59 ("I even saw elephants flying. That's how strong the pain was.").

Significantly, plaintiff's testimony at trial differed from his deposition testimony in a number of key respects. Specifically, plaintiff testified at his deposition that he and the contractor drove to the store together, and that the cart was loaded and waiting for them when they arrived. See Rodriguez Tr., ECF No. 24 Ex. E, at 36, 46; id. at 74 ("[The contractor] went in and left me waiting by the cart and the boards. The workers had already placed them on the cart."). Although plaintiff acknowledged during his deposition that he did not see the cart being loaded, he stated then that he believed that Home Depot employees had loaded the cart. Id. at 39-42. Plaintiff's deposition testimony was also clear with respect to the cart's performance immediately before the accident occurred: he testified that he did not have any difficulty moving the cart, and that "the cart rolled perfectly." Id. at 66; id. at 50 ("When I moved it, it was a little heavy, but I didn't have any difficulty.").

Plaintiff called two witnesses at trial who were at Home Depot on the morning of plaintiff's accident: brothers Luis Cedeno and Freddy Cedeno. Luis was standing outside the entrance to Home Depot speaking with a potential client and did not see the accident occur.[3] Id. at 86. Instead, he looked into the store through the doors and saw plaintiff had been knocked to

---

[3] He testified that he went to the Home Depot regularly to solicit business transporting customers and their purchases. Id. at 83.

the ground by the cart and was underneath the cart and the wood.  <u>Id.</u> at 87-88.  Because he recognized plaintiff as someone who would come to the store with clients to pick up materials and was concerned for his well-being, Luis came to plaintiff's assistance after the accident occurred.  <u>Id.</u> at 85.

Luis testified repeatedly and credibly at trial that, while he saw the cart on its side after the accident occurred, he did not pay attention to the cart's condition because he was more concerned with plaintiff's injury.  <u>See id.</u> at 89 ("I didn't pay much attention either to the cart or the wood.  I was more worried as to what was happening to him. . . . [Y]ou could say yes, that I saw [the cart] but I didn't pay attention to it."); <u>id.</u> at 99 ("I didn't pay too much attention on the cart, but really on what was happening to [plaintiff].").  He expressly stated that he did not see the cart's wheels after the accident.  <u>Id.</u> at 89.  Notably, Luis disavowed his prior deposition testimony, in which he stated that "the two tires or wheels on the right side . . . were turned or bent with the base and everything."  Dep. Tr. of Luis Cedeno, ECF No. 24 Ex. H., at 10.  When he was read this answer at trial, Luis responded, "That was not the question that I was asked nor the question that I answered.  They asked me about the wheels of the carts in Home Depot and I told them that generally speaking the wheels in the Home Depot carts were damaged."  Tr. at 92.

Luis's brother, Freddy Cedeno, was also at the Home Depot purchasing wood on the morning of plaintiff's accident.  <u>Id.</u> at 109, 117.  Like his brother, Freddy did not see the accident occur; plaintiff had already been knocked to the ground by the time Freddy saw him.  <u>Id.</u> at 118.  When he approached plaintiff, he noticed that the cart was "flipped over" a few feet from where plaintiff was lying on the floor and that defendant's employees were trying to move it to one

side.[4] Id. at 120. Freddy testified that he noticed that the two of the cart's wheels, and the bases holding those wheels, were "bent." Id. at 120-21. He also testified that defendant's employees "moved in front of the cart . . . . [T]hey tried to cover it so as photographs would not be taken." Id. at 123.

Freddy also offered his assessment of the general condition of Home Depot's shopping carts, testifying that, in the past, he had difficulties using the carts at various Home Depot stores, saying that, "generally, they don't slide correctly . . . because the wheels are no good. . . . They get stuck. They go to another, to a side." Id. at 113. He stated that he had noticed these problems in different types of carts – those with four wheels and those with six – and that, "generally speaking, the carts have problems." Id.at 114; see also id. at 125 ("At the Flushing Meadow [store], what happens is simply the carts there, they don't really run well. . . . I never had one tip over to me. Just simply stated, they are just not really dependable."). He testified that he had notified Home Depot employees about faulty carts in the past, but that he had never seen an employee take a cart out of service. Id. at 115-16, 125 ("Generally, they leave them there, the good and the bad are all mixed in there together.").

The parties stipulated to the admission of the deposition transcript of Philip Hartman, the assistant manager of defendant's store. Id. at 144-45; see also ECF Nos. 41, 42. Like the Cedeno brothers, Hartman arrived at the scene of plaintiff's accident shortly after it occurred, and observed the cart on its side. See Dep. Tr. of P. Hartman, ECF No. 24 Ex. F, at 27. Because he was primarily concerned for plaintiff's safety, he did not inspect the cart. Id. Hartman also did not know whether the cart was put back into service after the accident for another customer to use. Compare id. at 29 (stating that the cart was "put back in service right out in the parking

---

[4] Although Freddy testified at trial that the cart had four wheels, this testimony contradicted his prior deposition testimony that the cart had six wheels. Compare Tr. at 131("[The cart] had four wheels.") with Dep. Tr. of F. Cedeno, ECF No. 24 Ex. G, at 75 ("Q: You said there were six wheels on the cart, correct? A: Yes.").

lot" on the day of the accident) <u>with</u> <u>id.</u> at 34-36 (agreeing that he is "not really sure if it was put back into service that day").

Hartman testified at length during his deposition regarding how the carts at defendant's store were maintained, stating that defendant's employees did not conduct regular inspections of the carts. Hartman Tr. at 14-15. Instead, when the associates responsible for collecting carts used by shoppers noticed a cart that was "broken or unsafe," they would notify a supervisor and bring the cart to the store's "designated area for broken carts." <u>Id.</u> at 12-13; <u>id.</u> at 14-15 ("Q: [W]hat I'm asking is was there any sort of procedure in place by Home Depot where an employee of Home Depot, regardless of who that employee was, would inspect the carts on any sort of regular basis? A: Just as you are touching them, if they're unsafe you bring them back, but no official inspection as far as a date or time."). Although a third party company checked the carts every month to repair any damaged carts, Hartman could not identify the company by name and could not speak to how thoroughly the carts were inspected. <u>Id.</u> at 14-15 ("There's a company that repairs them and they walk the parking lot and check all carts to see if there's anything that needs to be repaired, missing wheels, stuff like that. How detailed their inspection is, I'm not sure."). According to Hartman's testimony, defendant kept no records regarding repairs to shopping carts or customer complaints about a particular cart. <u>See</u> <u>id.</u> at 14, 17 ("Q: Is there any sort of procedure if a customer was to complain about a cart that any paperwork with respect to the complaint would be filled out? A: No such paperwork, no.").

All of the witnesses who testified at trial about plaintiff's accident, either through live testimony or by deposition, viewed portions of a video from defendant's closed circuit television surveillance system. Every witness stated that, because of the poor quality of the video recording, it was difficult to determine what was depicted in the video. <u>See, e.g.,</u> Tr. at 136-38

(F. Cedeno describing video as "not very clear," "very dark," and testifying that he could not determine whether the video showed the Flushing Home Depot); id. at 102-03 (L. Cedeno testimony that "I cannot quite clearly see or distinguish" the persons in the video, "I can recognize that there is a person there, . . . but I cannot tell you for certain who it was"); id. at 68 (plaintiff testified that, although he recognized the scene as a Home Depot, he could not see the cart or the wood involved in the accident, and did not recognize himself in the video). Significantly, defendant's own employee was also unable to make out details of the accident from the video, stating that "some of the view was obstructed" and "on the video the scene is obstructed by a cart in front of it." Hartman Tr. at 40, 42. Having viewed the video numerous times, the Court confirms these witnesses' assessment that the recording sheds no light on what precipitated plaintiff's accident or the condition of the cart either before or after the accident.

## PROCEDURAL HISTORY

Plaintiff filed this personal injury action in New York State Supreme Court, Queens County shortly after the accident, alleging negligence as the sole cause of action. See Verified Complaint, ECF No. 24 Ex. A.[5]  After filing an answer on September 8, 2011 denying all substantive allegations, defendant removed the action to this Court on December 28, 2011 alleging diversity of citizenship and more than $75,000 in controversy. (ECF No. 1.)  Defendant moved for summary judgment on January 18, 2013. See ECF No. 24.

By Memorandum and Order dated August 28, 2013, the Court denied defendant's motion, holding that the record reflected disputed material issues of fact. ECF No. 29. Specifically, the Court noted:

> [P]laintiff testified unequivocally that neither he nor the contractor he
> accompanied to the store that day loaded the cart involved in his accident, and

---

[5]  Although plaintiff's Verified Complaint is dated May 4, 2011, two days after the accident, defendant's Notice of Removal states that the state court action was filed "on or about May 12, 2011."  (ECF No. 1.)

that the cart had already been loaded by the time they arrived at Home Depot. See Rodriguez Tr. at 39-42. In light of that testimony, a reasonable jury could infer that Home Depot employees were responsible for choosing the cart, loading the cart, and placing the cart where it would be picked up.

Id. at 12. The Court also concluded that whether defendant had constructive notice of a defect in plaintiff's cart was a material issue of fact, noting that, "[d]rawing all inferences and resolving all ambiguities in favor of plaintiff, the Court finds that a factfinder could conclude that plaintiff's cart was defective, and that a reasonable inspection of the cart would have disclosed the defect." Id. at 15.

## CONCLUSIONS OF LAW

"Plaintiff[] bear[s] the burden of offering evidence in support of the allegations set forth in the complaint and proving those allegations by a preponderance of the evidence." Burke v. Quick Lift, Inc., 668 F.Supp.2d 370, 378 (E.D.N.Y. 2009); see also Berroyer v. U.S., --- F.Supp.2d ----, 2014 WL 28727, at *24-25 (E.D.N.Y. Jan. 2, 2014) (applying preponderance of the evidence standard in personal injury action). Under New York law,[6] in order to prevail on a claim for negligence, plaintiff must prove that: "(1) defendant owed the plaintiff a cognizable duty of care; (2) the defendant breached that duty; (3) the plaintiff suffered damage as a proximate result of the breach." Diaz ex rel. Diaz v. U.S., No. 11-cv-5870, 2013 WL 4520294, at *3 (E.D.N.Y. Aug. 26, 2013) (internal quotations omitted). Moreover, a plaintiff seeking to establish the negligence of a store owner for injuries suffered on the premises must present evidence "that [defendant] created the dangerous condition which caused the accident or that it had actual or constructive notice of the condition." Repecki v. Home Depot USA, 942 F.Supp. 126, 130 (E.D.N.Y. 1996); see also Taylor v. U.S., 121 F.3d 86, 90 (2d Cir. 1997) ("Under New

---

[6] New York law applies to this personal injury action. See Velez v. Sebco Laundry Sys., Inc., 178 F.Supp.2d 336, 339 (S.D.N.Y. 2001) ("New York state law applies to this tort action because a federal court sitting in diversity applies the law of the forum state and because New York is the state where the tort occurred.").

York law, a landowner, who did not create the dangerous condition, is liable for negligence when a condition on his land causes injury only when the landowner had actual or constructive notice of the condition."); Stanton v. Manhattan East Suite Hotels, No. 01 Civ. 2394, 2002 WL 31641127, at *3 (S.D.N.Y. Nov. 22, 2002) ("A property owner is liable for injuries resulting from a dangerous condition upon the property if the owner created the dangerous condition or had actual or constructive notice of the same.").

"To show that defendant created a hazard a plaintiff must point to evidence that defendant 'created, or somehow was responsible for the creation of,' the hazardous condition." Shimunov v. Home Depot U.S.A., Inc., No. 11-cv-5136, 2014 WL 1311561, at *4 n.1 (E.D.N.Y. Mar. 28, 2014) (quoting Doona v. OneSource Holdings, Inc., 680 F.Supp.2d 394, 404 (E.D.N.Y. 2010)). Similarly, "[a] defendant has actual notice if it either created the condition or received reports of it such that it is actually aware of the existence of the particular condition" causing a plaintiff's injuries. Cousin v. White Castle Sys., Inc., No. 06–cv–6335, 2009 WL 1955555, at *7 (E.D.N.Y. July 6, 2009).

There is no evidence that defendant created or had actual knowledge of any defect in the cart plaintiff used on the day of the accident. Significantly, on summary judgment, the Court noted plaintiff's deposition testimony that he and the contractor found the cart loaded with wood when they arrived at the store together, which suggested the possibility that Home Depot employees loaded the cart and created a dangerous condition in doing so. See Mem. and Order, ECF No. 29, at 12 ("Here, plaintiff testified unequivocally that neither he nor the contractor he accompanied to the store that day loaded the cart involved in his accident, and that the cart had already been loaded by the time they arrived at Home Depot. . . . In light of that testimony, a reasonable jury could infer that Home Depot employees were responsible for choosing the cart,

loading the cart, and placing the cart where it would be picked up.").  At trial, however, plaintiff testified that the contractor arrived at the store before he did and was standing next to the loaded cart when plaintiff arrived at the store.  Tr. at 15 ("Q: When is the first time you saw the contractor?  A:  When I arrived to stand in line for – because he told me.  Look here.  This is the cart.  Remain and stay here, standing in line.  Q:  Was the cart already filled with wood?  A:  Perfect, yes.").  In contrast to the record on defendant's motion for summary judgment, where the Court was required to construe the motion in the light most favorable to plaintiff, the evidence now before the Court does not establish that defendant created the dangerous condition. There is no evidence that Home Depot employees loaded the cart involved in the accident.[7] Accordingly, defendant may only be held liable for plaintiff's injuries if plaintiff establishes, by a preponderance of the evidence, that defendant had constructive notice of a defect in the cart he used on the day of the accident.

"For a defendant to have constructive notice of a hazardous condition, 'a defect must be visible and apparent and it must exist for a sufficient length of time prior to the accident to permit defendant's employees to discover and remedy it.'"  Shimunov, 2014 WL 1311561, at *5 (quoting Riley v. Battery Place Car Park, 210 F. App'x 76, 77 (2d Cir. 2006)); see also Flowers v. Delta Airlines, Inc., No. 00-cv-783, 2001 WL 1590511, *8 (E.D.N.Y. Nov. 7, 2001) (same). The existence of a hazardous condition where the accident occurred does not, without more, establish constructive notice.  See, e.g., Hammond-Warner v. United States, 797 F.Supp. 207, 211 (E.D.N.Y. 1992) ("The mere existence of a liquid substance on the sidewalk where the accident allegedly took place does not establish constructive notice."); see also Torres v. United States, No. 09 Civ. 5092, 2011 WL 1432035, at *3 (S.D.N.Y. Apr. 11, 2011) ("New York courts

---

[7]  Freddy Cedeno's testimony that he had, on occasion, sought and received assistance from Home Depot employees in loading heavy materials onto a cart does not establish that defendant played any role whatsoever in loading the cart that caused plaintiff's injuries on the day in question.  Tr. at 110-12.

have consistently held that plaintiffs' description[s] of a dangerous [condition] alone are not sufficient to establish the defendants' constructive notice." (collecting cases)).

Plaintiff presented no evidence of a pre-existing defect in the cart he used on the day of the accident.[8] Instead, the only evidence relating to the condition of the cart comes from witnesses who viewed the cart <u>after</u> the accident and observed that two of the wheels on the cart were "bent." <u>See</u> Tr. at 20-21, 120-21. Even assuming that the cart's wheels or their bases were bent after the cart collapsed, however, there is no record evidence that this defect existed <u>before</u> the accident. <u>See, e.g.</u>, <u>Ascher v. Target Corp.</u>, 522 F.Supp.2d 452, 461-62 (E.D.N.Y. 2007) (plaintiff failed to establish constructive notice where "no one, including [plaintiff] could testify as to how long the pot [that fell and struck plaintiff] was allegedly on the lectern"); <u>Casiano v. Target Corp.</u>, No. 06-cv-6289, 2009 WL 3246836, at *4 (E.D.N.Y. Sept. 24, 2009) (finding that plaintiffs "cannot meet their burden at trial" where "plaintiffs have provided no evidence regarding for how long" the dangerous condition existed prior to the accident); <u>Kane v. Human Servs. Ctr., Inc.</u>, 186 A.D.2d 539, 540 (2d Dep't 1992) (plaintiff did not establish constructive notice where "plaintiff never noticed the puddle until after the accident, nor did she show that the puddle had been on the floor for any length of time"). In the absence of evidence that the cart

---

[8] Plaintiff's counsel argues that the cart's collapse proves that it was defective. <u>See</u> Pl. Tr. Mem., ECF No. 45, at 12 ("Should that cart not have been defective, same would not have fallen on top of plaintiff . . . ."). In effect, plaintiff's counsel suggests that the doctrine of *res ipsa loquitor* allows this Court to infer defendant's negligence. <u>See</u> <u>Ulerio v. Schindler Elevator Corp.</u>, No. 12 Civ. 1496, 2014 WL 1303710, at *4 (S.D.N.Y. Mar. 26, 2014) ("The doctrine of *res ipsa loquitor* . . . applies in circumstances where negligence may be inferred merely from the happening of an event and the defendant's relation to it, notwithstanding the fact that the actual and specific cause of the event is unknown." (internal citations omitted)); <u>see also</u> <u>County of Erie v. Colgan Air, Inc.</u>, 711 F.3d 147, 149 n.1 (2d Cir. 2013) (*res ipsa loquitor* is a doctrine "that allows an inference of negligence [to] be drawn solely from the happening of the accident upon the theory that certain occurrences contain within themselves a sufficient basis for an inference of negligence"). Because the cart that caused plaintiff's injury was available for use by customers in defendant's store, it was not within defendant's exclusive control. Accordingly, the doctrine of *res ipsa loquitor* is inapplicable here. <u>See</u> <u>Hammond v. Lincoln Technical Institute, Inc.</u>, No. 10-cv-1933, 2012 WL 273067, at *5 (E.D.N.Y. Jan. 30, 2012) ("Because the machinery [that malfunctioned and caused plaintiff's injury] was, for its very purpose, subject to manipulation by numerous other students, it cannot be said that the machinery was within defendant's exclusive control."); <u>Dermatossian v. New York City Transit Auth.</u>, 67 N.Y.2d 219, 228 (1986) (city bus grab handle was continuously available for use by defendant's passengers, such that defendant was not in exclusive control of handle).

was defective prior to the accident, and that the defect existed for a sufficient length of time for defendant's employees to discover and remedy it, plaintiff has not established that defendant had constructive notice of a defect in the cart. See Tenay v. Culinary Teachers Ass'n of Hyde Park, 281 Fed. App'x 11, 14 (2d Cir. 2008) (constructive notice not established where plaintiff "offered neither any evidence that the wet area was visible or apparent, nor any evidence suggesting how long the condition had existed prior to his fall").

Contrary to plaintiff's suggestion, the testimony regarding whether and when the carts were inspected does not support a finding of liability. "Although constructive notice can be inferred from circumstantial evidence, . . . [such as] expert testimony or other evidence that a reasonably prudent technician would have found the defect during a regularly scheduled inspection," Velez v. Sebco Laundry Sys., Inc., 178 F.Supp.2d 336, 341 (S.D.N.Y. 2001), plaintiff presents no such evidence here.[9] See also Hammond v. Lincoln Technical Institute, Inc., No. 10-cv-1933, 2012 WL 273067, at *2 n.3 (E.D.N.Y. Jan. 30, 2012) (no liability where "there is no evidence that a reasonable inspection would have revealed any defect in the machinery that may have caused this incident"); Stone v. 866 3rd Next Generation Hotel, LLC, No. 99 Civ. 4780, 2002 WL 1977956, at *5 (S.D.N.Y. Aug. 27, 2002) ("Plaintiff does not proffer evidence of a specific defect, much less that a reasonable inspection would have revealed such a defect."). This case is distinguishable, therefore, from Albergo v. Deer Park Meat Farms, Inc., 138 A.D.2d 656, 656 (N.Y. App. Div. 1988), where a New York court imposed liability on a store owner for injuries caused by a shopping cart that lost a wheel because "[e]xpert testimony

---

[9]  Because defendant did not preserve the cart involved in plaintiff's accident, the only evidence before the court regarding the condition of the cart is the testimony of witnesses who viewed the cart after the accident occurred. Moreover, no motion was made for sanctions based on spoliation of evidence, and no adverse inference was sought. Cf. Rivera v. National Passenger Railroad Serv., 442 F.Supp.2d 164, 168-70 (S.D.N.Y. 2006).

provided by the plaintiff's witness showed that reasonable inspection of the shopping cart would have given the defendant notice of the wheel's defective condition." Id.

Nor does the witnesses' general testimony relating to the unreliability of defendant's shopping carts establish defendant's notice of a defect. Although Freddy Cedeno testified repeatedly that he understood the carts at that particular store to be "generally" unreliable and that he had, on occasion, notified defendant's employees about faulty carts, it is well established that a "general awareness of a potentially dangerous condition is not enough to constitute notice of a particular condition." Stanton, 2002 WL 31641127, at *3. Instead, defendant must have notice of the particular condition at issue. See Taylor, 121 F.3d at 90 ("[T]he plaintiff must prove not simply that the defendant was generally aware of the existence of the dangerous condition, but that the defendant had notice of the particular condition at issue."); Gonzalez v. Wal-Mart Stores, Inc., 299 F.Supp.2d 188, 193 (S.D.N.Y. 2004) ("[T]he New York Court of Appeals has instructed that a defendant's 'general awareness' of a dangerous condition on the premises is not legally sufficient to charge a defendant with constructive notice of the particular condition that caused the plaintiff's injury"); Gordon v. Amer. Museum of Natural History, 67 N.Y.2d 836, 838 (1986) ("neither a general awareness that litter or some other dangerous condition may be present" nor the presence of other, earlier pieces of paper on the steps where the accident occurred sufficed to establish notice of the "the particular condition that caused [plaintiff's] fall"). Here, there is no evidence in the record that defendant had notice of any defect with the cart plaintiff used on the date of the accident.

The Court concludes that plaintiff failed to carry his burden to prove that defendant had actual or constructive notice of a defect in the cart. While it is tragic and clear that plaintiff was seriously injured in the Home Depot store on the day of the accident, the evidence simply does

not support a finding that defendant is liable for plaintiff's injuries.  See, e.g., Taylor v. U.S., 946 F.Supp. 314, 315 (S.D.N.Y. 1996) (noting that plaintiff's "injury was real and painful, but [] not the basis for a damage award. . . . The law recognizes there are accidents which occur for which no one is responsible, while there are others that occur because someone was careless or negligent and then that person is responsible."); Ward v. Cunard Line, Ltd., No. 84 Civ. 0981, 1986 WL 11197, at *6 (S.D.N.Y. 1986) (dismissing personal injury claim after bench trial where, "after full consideration of the record, the court determines that plaintiff has failed to sustain its burden of proving negligence by a preponderance of the credible evidence").

## CONCLUSION

Although plaintiff was seriously injured in an accident on May 2, 2011 at a Home Depot store in Flushing, New York, after full consideration of the record the Court concludes that plaintiff has failed to prove by a preponderance of the evidence that defendant was negligent. Accordingly, there is no basis for liability against Home Depot.  The Clerk of Court shall therefore enter judgment in favor of defendant and close this case.  The parties shall bear their own costs.

SO ORDERED.

_____/S/_____
LOIS BLOOM
United States Magistrate Judge

Dated:  April 30, 2014
        Brooklyn, New York